UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2:14-CV-91 (WOB-CJS)

ROBERT N. BAKER                                              PLAINTIFF

VS.                    **MEMORANDUM OPINION AND ORDER**

MICHAEL J. PAOLUCCI
BRETT MULLINS                                               DEFENDANTS

This is a civil rights action, in which Plaintiff brings claims under 42 U.S.C.A. § 1983 to redress alleged violations of the Fourth, Fifth, and Fourteenth Amendments, as well as claims for intentional infliction of emotional distress, false arrest, and malicious prosecution. The matter now comes before the Court on Defendants' Motion for Summary Judgment. (Doc. 39). Having reviewed the matter, and being sufficiently advised, the Court now issues this Memorandum Opinion and Order.

**I. Facts**

Robert Baker is an approximately 37-year-old schizophrenic man. On May 1, 2013, Baker spent the day walking approximately nine miles from his home to his girlfriend's workplace. (*See* Doc. 41, PageID# 210). Baker's girlfriend then drove him home, where he ate dinner, watched television, and took two antipsychotic pills. At approximately 11:30 p.m., Baker drove to a Kroger grocery store. (Doc. 41, PageID# 213). An hour-and-a-half later, Baker left Kroger with a bag of groceries that included milk and cookies. (*See* Doc. 41, PageID# 210; Doc. 42, PageID# 243). He ate the cookies as he drove toward his home. (Doc. 41, PageID# 215).

Two Lakeside Park/Crestview Hills police officers, Officer Brett Mullins and Sgt. Michael Paolucci, noticed Baker's Dodge Durango "weaving in its lane." (Doc. 43, PageID# 272). Baker

1

acknowledges that he "might have" been weaving, but claims "it was just for a brief second, like barely a blink of a[n] eye probably." (Doc. 41, PageID# 214-15). After the officers pulled over Baker's vehicle, Baker gave Mullins a Xerox copy of his driver's license. (Doc. 42, PageID# 246). With Baker still in the driver's seat, Mullins tried to give Baker three tests for driving under the influence. Mullins testified Baker refused to recite the alphabet, refused a finger test, and made multiple mistakes when counting backward from a designated number. (Doc. 42, PageID# 250). Baker does not remember whether he took the alphabet or finger test, but is "pretty sure" he accurately counted backward from the designated number—though he admits he was "kind of nervous." (Doc. 41, PageID# 216-17).

According to the officers, Baker then got out of his vehicle and walked slightly into an active traffic lane. (Doc. 42, PageID# 251). Baker then remembers having trouble with a walk-and-turn test and "probably fail[ing]" a one-leg stand test. (Doc. 41, PageID# 218-20). The officers testify that Baker showed signs of impairment on both a horizontal gaze nystagmus test and walk-and-turn test, leading Mullins to arrest Baker for driving under the influence and careless driving in light of the total circumstances. (Doc. 42, PageID# 253-57). It was only the second driving under the influence arrest Mullins had made in his career. (Doc. 42, PageID# 246).

The officers drove Baker to a nearby hospital. (Doc. 43, PageID# 278). Baker thought he was merely going there to receive psychiatric care. (Doc. 41, PageID# 220). After being denied the use of the phone, Baker consented to blood and urine tests. (Doc. 41, PageID# 221-22). While the nurse was taking Baker's blood sample, Mullins and Paolucci noticed marks on Baker's arm consistent with intravenous drug use. (Doc. 42, PageID# 260; Doc. 43, PageID# 279). Finally, the officers took Baker to the Kenton County Detention Center, where Baker blew a 0.00 on the Intoxilyzer 5000. (Doc. 42, PageID# 248).

The lab results on Baker's blood and urine showed that Baker was not under the influence of 34 drugs the lab tested for. (Doc. 39-8). After expressing her concerns about the lack of evidence in the case, Kenton County District Judge Ann Ruttle dismissed the charges against Baker, and the Circuit Court and Court of Appeals affirmed on appeal.

Exactly one year after the arrest, Baker filed this § 1983 claim. As his damages, Baker reports "seeing things" over the past few years and having nightmares about police officers. (Doc. 41, PageID# 228). This Court stayed the action pending final resolution of the state court case (Doc. 10), and now Defendants have moved for summary judgment.

## II. Analysis

Baker claims Mullins and Paolucci committed Constitutional violations throughout the events of this case. First, he claims the officers violated the Fourth Amendment both in pulling over his vehicle and in arresting him. Second, he claims the officers used excessive force while arresting him. And third he alleges the officers participated in a malicious prosecution against him in the subsequent months. He also brings state law claims for outrage, false arrest, and malicious prosecution.

The Court concludes that the record shows no Constitutional or statutory violations by Defendants. But even if there were, Mullins and Paolucci would be entitled to qualified immunity.

**A. The officers' initial decision to pull Baker over.**

**1. Officers had reasonable suspicion for traffic stop.**

Baker first claims the officers violated the Fourth Amendment by pulling him over without reasonable suspicion of a crime. The *Terry v. Ohio* reasonable suspicion standard applies to traffic stops. *Heien v. North Carolina*, 574 U.S. ---, 135 S. Ct. 530, 536 (2014)*; Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *United States v. Bost*, 606 Fed. App'x. 821, 823 (6th Cir. 2015)(citing *Terry*

3

*v. Ohio,* 392 U.S. 1 (1968)).

Under Kentucky law the officers were enforcing at the time, "a car weaving in its own lane is sufficient evidence on its own to create a reasonable suspicion." *Baker v. Commonwealth*, 475 S.W.3d 633, 635 (Ky. App. 2015); *see also Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 771 (6th Cir. 2004)(applying Michigan law and finding reasonable suspicion when motorist weaved twice to touch the center lane). The Supreme Court of Kentucky has also found that witnessing a car swerving outside its lane is sufficient for reasonable suspicion. *Davis v. Commonwealth*, 484 S.W.3d 288, 291 (Ky. 2016).

Here, Mullins and Paolucci saw Baker's car swerving within his lane multiple times. Both their training and Kentucky case law indicate such actions are sufficient for an officer to pull the vehicle over on reasonable suspicion of driving under the influence. Therefore, the officers had reasonable suspicion to pull Baker over and there was no Fourth Amendment violation.

**2. No clearly established violation.**

Even assuming *arguendo* that Mullins and Paolucci acted without reasonable suspicion, they would still be entitled to qualified immunity if they could show the Constitutional violation was not clearly established. The Supreme Court has repeatedly said that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017)(quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011)). To determine whether the law is clearly established, the district court "must look first to decisions of the Supreme Court, then to decisions of [the relevant Court of Appeals] and other [district] courts within [the] circuit, and finally to decisions of other circuits." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 788 (6th Cir. 2012) (quoting *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005)).

Here, if there was no reasonable suspicion, Mullins and Paolucci could only be liable if a

reasonable officer in Mullins and Paolucci's situation would have understood that their conduct violated the Fourth Amendment. *See al-Kidd*, 563 U.S. at 741. Given that, as noted *supra*, swerving within a lane gives an officer sufficient reasonable suspicion to pull over a vehicle, it follows that a reasonable law enforcement officer would believe the same.

Therefore, Mullins and Paolucci did not violate clearly established law when they pulled Baker over.

**B. The arrest.**

    **1. Officers had probable cause to make the arrest.**

Baker alleges the officers violated the Fourth Amendment by arresting him on suspicion of driving under the influence and reckless driving. These offenses require a showing of probable cause, which means the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016)(citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause does not require proof beyond a reasonable doubt, but simply evidence to establish that it is more likely than not that a crime has been committed. *See Jolley v. Harvell*, 254 F. App'x. 483, 488 (6th Cir. 2007)(citing *United States v. Jones,* 641 F.2d 425, 429 (6th Cir.1981)). Probable cause is usually a question for a jury, "unless there is only one reasonable determination possible." *Parsons v. City of Pontiac,* 533 F.3d 492, 501 (6th Cir.2008).

In hindsight, it is easy to question the decision to arrest Baker. The breathalyzer test taken at the jail showed Baker was not drunk. The blood tests taken at the hospital eventually showed Baker was not under the influence of the 34 drugs on that test. And the antipsychotic drugs Baker

took do not necessarily preclude driving.

Yet, this Court does not look at the situation with the benefit of hindsight. Instead, under *DeFillippo*, this Court views the situation given the information Mullins and Paolucci had at the time of the arrest. *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011)(citing *United States v. Pearce,* 531 F.3d 374, 380–81 (6th Cir. 2008)); *see also Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005).

Under that view, all of the information pointed toward Baker being under the influence of a drug. The officers observed Baker swerving while driving, which he admits. He indisputably showed signs of impairment on visual observation inside the vehicle, then struggled with two field sobriety tests outside the vehicle. It is true that the officers did not smell alcohol on Baker's breath, and instead suspected him of drug use. At the time of the arrest the officers were merely following their training, which indicated that there was probable cause to arrest a person for driving under the influence when he showed signs of impairment at three different junctures.

Therefore, the officers did not violate the Fourth Amendment when they arrested Baker.

**2. Qualified immunity.**

Even if the officers lacked probable cause to arrest Baker, they still would be entitled to qualified immunity. "An arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011)(quoting *Harris v. Bornhorst,* 513 F.3d 503, 511 (6th Cir.)). Baker is unable to point to any law that indicates that a reasonable officer in Mullins and Paolucci's situation would have known that arresting Baker was a Fourth Amendment violation, and this Court can find none. Since Mullins and Paolucci did not violate clearly

established law by arresting Baker, they are entitled to qualified immunity.

**C. Malicious prosecution claim.**

Baker alleges Mullins and Paolucci participated in a malicious prosecution against him, in violation of the Fourth Amendment.[1] To make out a claim for malicious prosecution, Baker must show four elements: (1) Defendants made, influenced or participated in the decision to prosecute Plaintiff; (2) there was a lack of probable cause for the criminal prosecution;[2] (3) as a consequence of a legal proceeding, Plaintiff suffered a deprivation of liberty apart from any initial seizure that may have occurred as part of Plaintiff's arrest; and (4) the criminal proceeding terminated in Plaintiff's favor. *Sykes v. Anderson,* 625 F.3d 294, 308-09 (6th Cir. 2010).

Plaintiff argues in reverse, emphasizing that his criminal case was dismissed and affirmed on appeal. Yet, addressing the test in the proper order, Plaintiff cannot satisfy the first prong of the test because there is no evidence Mullins and Paolucci participated in prosecuting Plaintiff.

An arresting officer can be liable for malicious prosecution if he "made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 311 (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). But an officer's "participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). If the officer plays no role after making an arrest, he cannot be

---

[1] Baker does not bring a malicious prosecution claim against the Kenton County Commonwealth Attorney, or anyone in that office. Such suits are barred. *See, e.g., Howell v. Sanders*, 755 F. Supp. 2d 789, 797 (E.D. Ky. 2010), *aff'd,* 668 F.3d 344 (6th Cir. 2012).

[2] Mullins and Paolucci note that a finding of probable cause above would address the second prong. *Garcia v. Thorne*, 520 F. App'x. 304, 307 (6th Cir. 2013); *see also Bach v. Drerup*, 545 F. App'x. 474, 478 (6th Cir. 2013)(citing *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001). Yet, probable cause means not only probable cause to make the arrest, but also probable cause to "initiate the criminal proceedings." *Sykes*, 625 F.3d at 311. To prevail on summary judgment on this prong, Mullins and Paolucci would have to show that no reasonable jurors would believe the Commonwealth lacked probable cause when it began prosecuting Baker.

liable for malicious prosecution. *See Guerra v. Rodriguez*, CIV. 10-199-JGW, 2012 WL 208083, at *11 (E.D. Ky. Jan. 24, 2012). Making the decision to prosecute is in the sole discretion of the prosecutor's office in Kentucky. Thus, Mullins and Paolucci did not make the decision to prosecute Baker.

Nor did Mullins and Paolucci unduly influence the decision to prosecute. The Sixth Circuit has found that an arresting officer can be liable for malicious prosecution if he fails to provide prosecutors with "*truthful* materials." *Sykes*, 625 F.3d at 314; *see also Billock v. Kuivila*, No. 4:11-CV-02394, 2013 WL 591988, at *4 (N.D. Ohio Feb. 14, 2013). Mullins and Paolucci provided the arrest report summarizing the events at the roadside, the video of the arrest, and the results of the blood, urine, and breath tests. None of this was misleading or false. Thus, Mullins and Paolucci did not improperly influence the decision to prosecute Baker.

Finally, Mullins and Paolucci did not participate in the decision to prosecute Baker. Within this context, Mullins and Paolucci must have "participate[d] in a way that aid[ed] in the decision, as opposed to passively or neutrally participating." *Sykes*, 625 F.3d at 309 n.5. The only potential evidence of participation is an email from Paolucci to Kenton County prosecutor Christopher Nordloh asking whether Nordloh planned to appeal the district court dismissal, and indicating Paolucci's unfamiliarity with the appellate process. (Doc. 49-9). Reading the email, it is clear Paolucci did not aid Nordloh in the prosecution, but merely inquired about the status of the case. Thus, the officers did not participate in the decision to prosecute Baker.

Baker may be correct that, as a policy matter, the prosecutors were unwise to pursue the case after a breathalyzer, blood test, and urine test did not show any signs of intoxication. But because Mullins and Paolucci did not make, influence, or participate in the decision to prosecute Baker, the officers cannot be liable for malicious prosecution.

**D. Intentional infliction of emotional distress claim.**

Baker alleges Mullins and Paolucci acted outrageously, bringing a Kentucky state law claim for outrage. *See Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). To make out a claim for outrage, a Plaintiff must prove (i) the Defendant acted intentionally or recklessly, (ii) in a way that was "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality," (iii) Plaintiff's emotional distress is caused by Defendant's actions, and (iv) the emotional distress is severe. *Id.* (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).

In assessing outrageous behavior, a court must look at whether the Defendant acted outside the "generally accepted standards of decency and morality." *Craft*, 671 S.W.2d at 249. In some instances, outrageous behavior "may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Kroger*, 920 S.W.2d at 67 (citing Restatement (Second) of Torts § 46). The Supreme Court of Kentucky has emphasized that "[c]itizens in our society are expected to withstand petty insults, unkind words and minor indignities" because "[i]t is only outrageous and intolerable conduct which is covered by this tort." *Id.* at 65.

For example, the Supreme Court of Kentucky found outrageous behavior when a grocery store intentionally led an ill man to believe he would be considered for a non-existent position if he released all claims against the company. *Id.* at 67. The Court also found outrageous behavior when Defendants kept a person under surveillance, informed her over a CB radio that her husband was going to jail, and attempted to force her off the road. *Craft*, 671 S.W.2d at 249. By contrast, though, the Supreme Court of Kentucky held that cold and callous treatment of a hospital patient

was not outrageous. *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990).

Mullins and Paolucci held an honest—if mistaken—belief that Baker was driving under the influence. The officers' training taught them to investigate, make an arrest, take physical evidence, and place Baker in jail. Rather than offending "generally accepted standards of decency and morality," these actions comport with society's expectations of law enforcement. *Craft*, 671 S.W.2d at 249. This conduct does not rise to the level to constitute outrage.

Because Baker cannot meet the second prong of the test, he cannot make out a claim for outrage, and this Court must grant summary judgment on that claim.

**E. Excessive force, Eighth Amendment, state law false arrest, and state law malicious prosecution claims.**

In his complaint, Baker alleged Mullins and Paolucci used excessive force against him (Doc. 1, PageID# 13), violated the Eighth Amendment (*id*.), met the elements of false arrest under state law (*id*. at 17), and met the elements of a state law malicious prosecution claim. (*Id*. at 19). Baker did not address any of these claims in his response brief, however, and he thus has waived the claims. (Doc. 49). Therefore, this Court will grant summary judgment all four claims.

**III. Conclusion**

Therefore, having reviewed this matter, and being otherwise advised, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 39) be, and is hereby, **GRANTED**.

A separate judgment shall enter concurrently herewith.

This 2nd day of June, 2017.



Signed By:
*William O. Bertelsman* WOB
United States District Judge